Mary E. SUMAKERIS, Plaintiff,

v.

UNITED STATES, Defendant.

No. 94–139C.

United States Court of Federal Claims.

Sept. 28, 1995.

Jack E. Carter, Fayetteville, North Carolina, attorney of record, for Plaintiff.

Martin F. Hockey, Jr., Commercial Litigation Branch, Department of Justice, Washington, D.C., attorney of record, for Defendant.

## OPINION

HORN, Judge.

This case comes before the court on the parties' cross-motions for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). Plaintiff's complaint alleges that defendant, the United States, acting through the United States Department of the Army, neglected to provide plaintiff, Mary E. Sumakeris, with notification of her former husband's election to withdraw from participation in the Survivor Benefit Plan established in 10 U.S.C. § 1447 *et seq.* (1988). Plaintiff further alleges that her former husband's election not to provide her with survivor annuities is ineffective due to the failure of the Army to provide her with adequate notice of her former husband's election to withdraw.

On July 21, 1994, defendant responded to plaintiff's complaint by filing a motion to dismiss, or in the alternative, for summary judgment. Defendant's motion to dismiss, based upon RCFC 12(b)(4), alleges that the plaintiff failed to properly state a claim upon which relief may be granted. Although defendant did not file papers to withdraw the motion to dismiss, at the oral argument, in response to questions from the court regarding whether a motion to dismiss was proper in the instant case, counsel for defendant stated:

At this stage, Your Honor, I think it is properly a motion for summary judgment given the additional pleadings and papers that have been filed with the Court....

Therefore, this court proceeds to examine only the contentions raised in the cross-motions for summary judgment. Those motions set forth three issues: first, whether the Army had a duty to notify plaintiff of the decision by Mr. Sumakeris not to participate in the Survivor Benefit Plan; second, if so, whether the Army adequately notified plaintiff of her former husband's election to withdraw from the Survivor Benefit Plan; and, third, whether plaintiff is eligible to receive benefits under the Survivor Benefit Plan.

The government asserts that it satisfied the notice requirement by sending timely notice to the plaintiff at the address provided by the servicemember and that the defendant had no reason to suspect that the address provided by the servicemember was inaccurate. Further, the defendant maintains that the government only is required to provide notice of Mr. Sumakeris' election at the address provided by the servicemember husband, not to conduct an independent verification of every address provided. In support, defendant points to the absence of a statutory or regulatory requirement detailing the type of notice which must be provided to spouses or other beneficiaries of a servicemember's decision to withdraw from the Survivor Benefit Plan, or the manner in which such notice must be provided. Moreover, the defendant asserts that the government had no notice that the plaintiff had not received the notification letter sent to her, since the letter mailed to Mrs. Sumakeris was not returned as undeliverable. Finally, the defendant argues that even if the notice provided to Mrs. Sumakeris was defective, the plaintiff, nonetheless, is ineligible to receive Survivor Benefit Plan annuities at this time, due to her failure to comply with applicable statutory requirements for eligibility.

On January 9, 1995, plaintiff filed her opposition to defendant's motion for summary judgment, as well as a cross-motion for summary judgment. In her cross-motion, plaintiff asserts that defendant's attempt to provide notice to her was not reasonably prudent and, therefore, the attempted notice was insufficient to satisfy the notice requirement. Plaintiff argues that the defendant was obliged to undertake reasonable steps to assure that she actually had been notified of her husband's election to withdraw from participation in the Survivor Benefit Plan, and that the Army's failure to ensure that notification of an election to withdraw was in fact received and understood by plaintiff invalidates the election by the servicemember husband. Plaintiff, however, has ignored the issue of Mrs. Sumakeris' eligibility to receive benefits under the Survivor Benefit Plan, as well as the issue of counseling, despite both issues having been raised in defendant's reply brief and in defendant's supplemental brief. The parties also each filed supplemental briefs following the oral argument. After careful review of the record, this court finds that no material issue of fact remains in dispute, and that, therefore, the above-captioned case is ripe for summary disposition.

## FACTS

Plaintiff and her former husband, Joseph J. Sumakeris, were married on October 13, 1966. Mr. Sumakeris was an active duty member of the United States Army. On November 27, 1984, during his tour of duty in the Army, Mr. Sumakeris elected to participate in the Army's Survivor Benefit Plan, 10 U.S.C. § 1447 *et seq.* Pursuant to the Survivor Benefit Plan, beneficiaries named by Mr. Sumakeris would become eligible under the plan to receive benefits upon his death. On December 4, 1984, following the decision by her then husband, Joseph Sumakeris, to participate in the Survivor Bene-

fit Plan at some level, Mrs. Sumakeris signed the Army Form DA 4240, which is required to be given to spouses when a married servicemember does not elect full coverage for a spouse. Her signature on the Form DA 4240 confirmed that she had been fully informed and counseled concerning the options available under the Survivor Benefit Plan, and that she understood the actions taken by her husband. On January 1, 1985, Mr. Sumakeris retired from the United States Army.

On November 8, 1985, The Survivor Benefit Plan Amendments of 1985 were enacted. *See* Pub.L. 99–145, 99 Stat. 670, 99th Cong., 1st Sess. (1985) (codified at 10 U.S.C. § 1448 Note). That Act includes a provision which gave the option to certain participants in the Survivor Benefit Plan to withdraw an earlier election to participate in the plan. *Id.* at § 711(c). In pertinent part, section 711(c) of the Act provides the following:

> A person who during the period beginning on October 19, 1984, and ending on the date of the enactment of this Act became a participant in the Survivor Benefit Plan under subchapter II of chapter 73 of title 10, United States Code, may elect to withdraw from the Plan before the end of the one-year period beginning on the date of the enactment of this Act....

*Id.*

On March 20, 1986, pursuant to section 711(c) of the Survivor Benefit Plan Amendments of 1985, the Army sent Mr. Sumakeris a letter requesting information as to whether Mr. Sumakeris wished to withdraw from the Survivor Benefit Plan. At that time, Mr. Sumakeris resided at 5322 Morganton Road, Fayetteville, North Carolina, and the letter was sent to him at that address. In the letter, the Army stated: "We will notify your existing beneficiary with the exception of children if you withdraw from the Plan."

On October 31, 1986, Mr. Sumakeris returned the form provided by the Army and indicated that he elected to withdraw from participation in the Survivor Benefit Plan. Mr. Sumakeris' response was stamped received by the Army on November 6, 1986. In his response, Mr. Sumakeris provided the name and address of the plaintiff, Mary E. Sumakeris, as a currently listed, future bene-

ficiary under the Survivor Benefit Plan. On his election form, Mr. Sumakeris listed plaintiff's address as 5322 Morganton Road, Fayetteville, N.C. 28304. Therefore, based upon the information provided by Mr. Sumakeris, on or about December 15, 1986, the Army sent a letter to Mrs. Sumakeris notifying her that Mr. Sumakeris had elected to withdraw from the Survivor Benefit Plan. Although the only copy of the letter in the record appears to bear date stamps of both December 11, 1986, and December 15, 1986, and is unsigned, neither party contests that the letter was sent or the contents of the letter. The letter was addressed to Mrs. Sumakeris at the Morganton Road address provided by her husband in his October 31, 1986 response to the Army. Mrs. Sumakeris claims never to have received the letter and defendant does not dispute her contention.

On October 23, 1986, Mr. and Mrs. Sumakeris were issued a separation from bed and board by the General Court of Justice, District Court Division, Cumberland County, North Carolina. Pursuant to the 1986 divorce decree document, Mr. Sumakeris was awarded primary custody of the only child of the three children born from the marriage who was still a minor, and was awarded sole and exclusive use and possession of the family residence, located at 5322 Morganton Road, Fayetteville, North Carolina. No document has been provided in the record which reflects a separate address for Mrs. Sumakeris during the relevant time period. The plaintiff's complaint and the parties' subsequent pleadings indicate that Mr. and Mrs. Sumakeris were issued a final divorce on October 21, 1987, after a one-year waiting period. Thereafter, on September 16, 1988, a Judgment of Equitable Distribution was entered between Mr. and Mrs. Sumakeris in the General Court of Justice, District Court Division, Cumberland County, North Carolina. Joseph J. Sumakeris died on January 22, 1993, eight years after his retirement from the Army.

## DISCUSSION

█ Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[1] Both rules provide that summary judgment "... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■■■ Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir. 1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. Voluntary Employees' Beneficiary Ass'n. Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "... the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

■■■ When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2511; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if under no scenario can the nonmoving party present the evidence to support its case, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

■■■ If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■■■ The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If the moving

---

1. In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil procedure is relevant to interpreting the rules of this court, including RCFC 56.

*See Jay v. Sec'y DHHS*, 998 F.2d 979, 982 (Fed. Cir.1993); *Imperial Van Lines Int'l Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assoc.,* 20 Cl.Ct. at 679.

■ Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

■ In the above-captioned case, both plaintiff and defendant have filed motions for summary judgment. The fact that both the parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.,* 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.,* 528 F.2d 1388, 1390 (2d Cir.1976); *Ishida v. United States,* 31 Fed.Cl. 280, 284 (1994). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco Industries, Inc. v. United States,* 29

Fed.Cl. 318, 322 (1993), *aff'd* 31 F.3d 1176 (Fed.Cir.1994). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.,* 812 F.2d at 1391.

As stated above, the issues presently before this court on the parties' cross-motions for summary judgment are whether the defendant, acting through the United States Army, had a responsibility to notify the plaintiff of the election by Mr. Sumakeris not to participate in the Survivor Benefit Plan; if so, whether the defendant satisfied that responsibility; and, finally, whether the plaintiff, Mrs. Sumakeris, qualifies for benefits under the Survivor Benefit Plan, established in 10 U.S.C. § 1447 *et seq.* The record reveals no material issues of fact in dispute and, therefore, this case is ripe for summary disposition.

At the time Mr. Sumakeris made his election to withdraw from the Survivor Benefit Plan, pursuant to section 711(c) of the Survivor Benefit Plan Amendments of 1985, the plaintiff and Mr. Sumakeris already had been issued a divorce decree from bed and board by the General Court of Justice, District Court Division, Cumberland County, North Carolina, on October 23, 1986. That decree, however, did not dissolve the marriage of Mr. and Mrs. Sumakeris.

■ According to North Carolina domestic relations law, the issuance of a divorce from bed and board acts as a separation of the parties, but not as a dissolution of the marriage. The concept of divorce from bed and board appears to be well settled in North Carolina, and North Carolina State and Appellate Courts have adopted the following approach:

A divorce from bed and board is nothing more than a judicial separation; that is, an authorized separation of the husband and wife. Such divorce merely suspends the effect of the marriage as to cohabitation, but does not dissolve the marriage bond.

*Triplett v. Triplett,* 38 N.C.App. 364, 366–67, 248 S.E.2d 69, 71 (1978), citing *Schlagel v. Schlagel,* 253 N.C. 787, 790, 117 S.E.2d 790,

793 (1961), *see also,* North Carolina General Statutes, Article 1, § 50–7 (1994).

The plaintiff, Mary Sumakeris, contends that she was not living at the marital residence, 5322 Morganton Road, Fayetteville, North Carolina, during the couple's separation from bed and board. It was during this period of separation, but prior to the divorce becoming final, on October 21, 1987, that Mr. Sumakeris elected not to participate in the Survivor Benefit Plan. It was also during this period of time, on December 15, 1986, that the Army contends it sent notification to Mrs. Sumakeris, at the address listed for plaintiff by Mr. Sumakeris in his notification to the Army that he elected to withdraw from the plan.

On October 21, 1987, one year after the issuance of the divorce from bed and board, the divorce decree became final, thereby dissolving the marriage between Mr. Sumakeris and the plaintiff. Subsequently, on September 16, 1988, a Judgement of Equitable Distribution was entered between Mr. and Mrs. Sumakeris. Although plaintiff was officially divorced at that time, and believed she was eligible for benefits as a former spouse under the Survivor Benefit Plan, plaintiff alleges that it was not until after Mr. Sumakeris died on January 22, 1993, the date that Mrs. Sumakeris would have become eligible to receive benefits under the Plan, that she discovered her former husband had elected to withdraw from the Survivor Benefit Plan.

The purpose of the Survivor Benefit Plan is to fund an annuity paid to a surviving spouse and dependent children upon the servicemember's death, *see* 10 U.S.C. § 1448(a), except if the servicemember elects not to participate in the plan before the first day on which he becomes eligible for retirement pay, in the case of Mr. Sumakeris, January 1, 1985, the date he retired. *Id.* The Survivor Benefit Plan, as amended in 1985, provides, in pertinent part:

### § 1448. Application of Plan

(a)(1) The program established by this subchapter shall be known as the Survivor Benefit Plan. The following persons are eligible to participate in the Plan:

(A) Persons entitled to retired pay.

\* \* \* \* \* \*

(2) The Plan applies—

(A) to a person who is eligible to participate in the Plan under paragraph (1)(A) and who is married or has a dependent child when he becomes entitled to retired pay, unless he elects (with his spouse's concurrence, if required under paragraph (3)) not to participate in the Plan before the first day for which he is eligible for that pay;

\* \* \* \* \* \*

3(A) A married person who is eligible to provide a standard annuity, may not without the concurrence of the person's spouse elect—

(i) not to participate in the Plan;

(ii) to provide an annuity for the person's spouse at less than the maximum level; or

(iii) to provide an annuity for a dependent child but not for the person's spouse.

10 U.S.C. § 1448(a).

On November 8, 1985, the Survivor Benefit Plan Amendments of 1985 were enacted which provided a one-year opportunity to servicemembers who had elected into the Survivor Benefit Plan between October 19, 1984 and November 8, 1985, to withdraw from that plan. Section 711(c) provides:

A person who during the period on October 19, 1984, and ending on the date of the enactment of this Act became a participant in the Survivor Benefit Plan under subchapter II of chapter 73 of title 10, United States Code, may elect to withdraw from the Plan before the end of the one-year period beginning on the date of the enactment of this Act.

Pub.L. No. 99–145, Title VII, Part A, § 711(C), 99 Stat. 670 (codified at 10 U.S.C. § 1448 Note).

The Department of Defense also issued "Implementation Guidance—Survivor Benefit Plan Amendments of 1985—Title VII, Public Law 99–145, November 8, 1985—Department of Defense Authorization Act, FY 1986", which sets forth procedures and require-

ments under the Act. Section II of the "Implementation Guidance", entitled "Special Withdrawal Provisions", specifies that notice to the surviving spouse is required if a participant withdraws pursuant to section 711(c) of the Act, as follows: "If any member withdraws from participation for a spouse or spouse and child, that member's spouse will be notified in the same manner, appropriately documented, as if the member had elected not to participate in the Plan upon retirement."

Previously, Army Regulation 608–9, which took effect on September 1, 1983, had put in place guidelines for the counseling of a spouse pursuant to 10 U.S.C. § 1448. That regulation states:

**5–4. Counseling of Spouse**

a. If a married member declines to participate or elects less than maximum for spouse, or spouse and children coverage, the RSO must inform the spouse of the decision before the member retires.

b. If possible, the spouse will be requested to be at the member's counseling, or he or she will be counseled separately. The spouse will then be asked to sign the statement in part IX, DA Form 4240. If the spouse declines to sign, the RSO or counselor will note this fact on the statement and sign in the space provided.

c. When a spouse cannot be counseled personally, as in b above, he or she will be informed promptly, by letter, when the member completes parts IV and VII, DA Form 4240. Then the RSO will complete part IX. A copy of the letter to the spouse will be attached to the form. If the spouse returns the acknowledgement copy of the letter, it will be attached to the form, if available, or mailed to USAFAC.

There is nothing in the record before this court to indicate that Mrs. Sumakeris was offered any type of counseling regarding the decision of Mr. Sumakeris made on October 31, 1986 to withdraw from the Survivor Benefit Plan. Defendant argues that counseling was provided, as indicated by the Army Form DA 4240 which Mrs. Sumakeris signed on December 4, 1984. That form, however, evidences that Mrs. Sumakeris was offered counseling regarding Mr. Sumakeris' deci-

sion to elect to participate in the Survivor Benefit Plan in 1984. The events related to the Form DA 4240 signed by plaintiff occurred almost two years prior to Mr. Sumakeris' election to withdraw from the Plan and are, therefore, irrelevant to the events in 1986.

■ While neither the applicable statutory sections, the "Implementation Guidance" to the Amendments of 1985, nor Army Regulation 608–9, define what constitutes proper notice, the legislative history of the Survivor Benefit Plan legislation and the relevant case law reveal that it was the clear intent of Congress to ensure that a servicemember's beneficiary was both notified and counseled regarding a servicemember's decision to opt out of the Survivor Benefit Plan.

From the legislative history, it is clear that Congress intended to sharply reduce the possibility that a servicemember's dependents, inadvertently, might be left without any coverage. As clearly expressed in the House Report,

> If a retiree who is married elects not to participate in the plan at the maximum level, the bill provides that the person's spouse shall be notified. The Committee believes the program will receive overwhelming acceptance, such as has been experienced by the Civil Service survivor annuity system. However, the Committee is concerned that in a relatively few cases survivors may unknowingly be left in a situation of great hardship because a retiree, for one reason or another, did not join the program or provide an adequate annuity for his dependents.
>
> It is the intention of the Committee, therefore, that regulations designed to carry out this provision of the bill provide for counseling by competent officers for those about to retire who elect to participate at less than the maximum level. It is further the intention of the Committee that the spouse of the member concerned will be present at the counseling session if possible or provided separate counseling as necessary to be made fully aware of the options available and the election made by her husband. It is the intention of the

Committee that in satisfaction of this requirement counseling officers shall certify, in the event the retiree elects not to participate or participate at less than the maximum level, that counseling has been provided and shall present the spouse with a statement that specifies she has been counseled and indicates the counseling officer's satisfaction that she fully understands the implications of her husband's election. The spouse should be invited to sign the statement indicating she has been counseled and understands the decision. The counseling officer should stand ready to provide any further information that the retiree or spouse may require.

This new survivor annuity program makes a significant addition to the estate of the military retiree, and the Committee does not want a benefit of this magnitude lost to an individual service family through lack of awareness. It therefore wishes responsibility clearly placed on administrative officers to see that full counseling has been provided as to the effect on survivors of an election not to participate or to participate at a reduced level.

The rights in retirement pay accrue to the retiree and, ultimately, the decision is his as to whether or not to leave part of that retirement pay as annuity to his survivors. However, the Committee wants every effort made to be sure that the advantage is not lost through neglect or lack of understanding and that the spouse fully understands the election may profoundly affect her future welfare.

H.R.Rep. No. 92–481, 92d Congress, 1st Sess. at 8–9.

In *Barber v. United States,* 230 Ct.Cl. 287, 676 F.2d 651, 657 (1982), an often cited case decided by this court's predecessor, the United States Court of Claims, stated that "Congress intended that an election out of the [Survivor Benefit] plan would not be binding unless the statutory notice requirement was satisfied." *Id.* at 657; *see also* 10 U.S.C. 1448(a)(3)(A); *Hart v. United States,* 910 F.2d 815 (Fed.Cir.1990); *Kelly v. United States,* 826 F.2d 1049 (Fed.Cir.1987), *Trone*

*v. United States,* 230 Ct.Cl. 904, 1982 WL 25268 (1982).

The court in *Barber* further wrote:

Notice was meant to safeguard the rights of the spouse and not merely as advice after the fact. Given the dramatic nature of the evil to be prevented, as illustrated by the present case, we cannot believe that Congress intended notice as an empty gesture. *United States v. American Trucking Ass'n,* [sic] 310 U.S. 534, 542–43, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). While we acknowledge that not every statutory or regulatory violation will necessarily invalidate an election out of the plan, the legislative history of section 1448(a) indicates to us that such a result is compelled when the notice requirement is violated.

*Barber v. United States,* 676 F.2d at 658.

The *Barber* court cites to the legislative history to demonstrate that when enacting the spousal notification provisions of 10 U.S.C. §§ 1448 and 1455, the congressional purpose of the notice and counseling requirement was to prevent "a servicemember's wife from learning for the first time that she was left without support at her husband's death, by providing her notice and participation in the counseling that was to precede a decision to elect out [of the plan]." *Id.* The *Barber* decision is clear that the congressional purpose of enclosing a notification requirement demands the conclusion that the defendant has a duty beyond "merely providing notice." *Id.* at 656. In *Barber,* because the government was unable to prove that it had sent notification to the servicemember's spouse, the servicemember's decision to opt out of the Survivor Benefit Plan was considered void.

■■■ The requirement of notifying and offering counseling to a servicemembers' spouse has been further reinforced in decisions issued by the United States Court of Appeals for the Federal Circuit. That court has adopted the reasoning in *Barber v. United States.* In *Kelly v. United States,* the Federal Circuit stated:

The legislative history as outlined in *Barber* makes it clear that Congress intended to prevent a serviceman's wife from

learning for the first time that she was left without support at her husband's death, by guaranteeing her by law the right to notice and the opportunity for counseling before any election out by the service member would be effective. Failure to follow these procedures would by clear implication give rise to a substantive right to money improperly withheld because, as noted above, participation in the SBP was automatic, absent an affirmative election out of it and proper notification to the spouse. As held in *Barber*, failure to pay an automatic annuity under the SBP, absent such a valid election out by the service member, gives rise to a claim within the jurisdiction of the Claims Court for money improperly withheld.

*Kelly v. United States*, 826 F.2d at 1051–2. The *Kelly* court further addressed the impact of the 1985 amendments as follows:

> Actually, the 1985 enactment reiterated in 10 U.S.C. § 1448(a)(6)(C) the earlier notice requirement and did so without in any way altering the judicial interpretation of it in *Barber*.

Similarly, in *Hart v. United States*, the Court of Appeals for the Federal Circuit opined:

> A member of the military who does not want to participate in the SBP must elect not to participate. 10 U.S.C. § 1448(a)(2)(A) (1976). If a member elects not to participate, the military is required to notify the member's spouse of the election. 10 U.S.C. § 1448(a)(3)(A) (1976). The military's failure to notify the member's spouse voids the member's election not to participate in the SBP. *Barber v. United States*, 676 F.2d at 654.

*Hart v. United States*, 910 F.2d at 817–18.

The importance of the notice and counseling provisions is further supported by *McFarlane v. Secretary of the Air Force*, 867 F.Supp. 405 (E.D.Va.1994). Although not binding upon this court, the District Court's decision in *McFarlane* is instructive. In that case, Colonel McFarlane elected to reduce the amount of retired pay that he would contribute to the Survivor Benefit Plan. His wife signed her name as a witness to her husband's signature on the election certificate. The Army never sent notice to Ms.

McFarlane or counseled her regarding her husband's election to reduce her benefits under the Plan. Ms. McFarlane maintained that despite her signature on the election certificate at the time of her husband's retirement, she had no understanding of his election to reduce survivor benefits. The District Court held that even if Colonel McFarlane had provided his wife with actual notice of the reduction, the Army was not relieved of its duty to notify and counsel her regarding the consequences of the election. That court wrote that "even if Ms. McFarlane had received actual notice from any source before the time of her husband's retirement, she would have had a claim for reinstatement of benefits owing to the absence of counseling by the Air Force." *Id.* at 410, n. 6. The court found that the Air Force had committed legal error in failing to notify and counsel Ms. McFarlane.

■ The unequivocal legislative history to the statute and the statements by the courts cited above are contrary to defendant's allegations in this case that the government merely has a duty to send a letter to the plaintiff at the listed address, and need not undertake further steps to assure notice and counseling of a servicemembers' listed beneficiary. It appears that the House Committee sought to place a stronger duty on the government to ensure that spouses are not left uncovered without notice and counseling. The intent of the legislation is clearly evident in a statement of the Committee Report: "it [the Committee] wishes responsibility clearly placed on administrative officers to see that full counseling has been provided as to the effect on survivors of an election not to participate or to participate at a reduced level." *Id.* Under the facts and circumstances of the present case as described above, the Army did not comply with its duty to ensure that Mrs. Sumakeris was notified and counseled regarding Mr. Sumakeris' October 31, 1986 election to withdraw from the Survivor Benefit Plan.

In the instant case, however, even if the Army failed to properly notify and counsel the plaintiff of Mr. Sumakeris' decision to withdraw from the Survivor Benefit Plan, the court, nonetheless, will award summary judg-

ment to the defendant. The third and remaining issue before this court is whether, in fact, Mrs. Sumakeris can qualify for benefits under the Survivor Benefit Plan. It appears from the record and the relevant law, as more fully discussed below, that despite the government's failure to fully comply with the notice and counseling requirements, Mrs. Sumakeris is not entitled to receive a Survivor Benefit Plan annuity due to the failure to meet the requirements for eligibility as a former spouse imposed by the statute which establishes the Survivor Benefit Plan.

■ On October 23, 1986, the plaintiff and Joseph Sumakeris were issued a separation from bed and board. The divorce became final after a one-year waiting period, on October 21, 1987. The Survivor Benefit Plan allows for benefits payable to a former spouse, if the surviving former spouse meets the definition provided in the plan and the servicemember provided the appropriate election and notices required by the plan. The definition of a "former spouse" is included in 10 U.S.C. § 1447(6), which states as follows:

(6) The term "former spouse" means the surviving former husband or wife of a person who is eligible to participate in the Plan.

Although the plaintiff was a spouse at the time Mr. Sumakeris became eligible to participate in the Survivor Benefits Plan, and, technically, still was his wife at the time Mr. Sumakeris elected to withdraw, plaintiff failed to remain eligible for future benefits as a former spouse following the divorce because Mr. Sumakeris did not make a voluntary election for former spouse coverage within one year after the date of the divorce, pursuant to 10 U.S.C. § 1448(b)(3)(A). That provision provides as follows:

(3)(A) A person—

(i) who is a participant in the Plan and is providing coverage for a spouse or a spouse and child (even though there is no beneficiary currently eligible for such coverage), and

(ii) who has a former spouse who was not that person's former spouse when he became eligible to participate in the Plan, may (subject to subparagraph (B)) elect to

provide an annuity to that former spouse. Any such election terminates any previous coverage under the Plan and must be written, signed by the person, and received by the Secretary concerned within one year after the date of the decree of divorce, dissolution, or annulment.

■ In the case at bar, it is undisputed in the record that no election to provide a former spouse with coverage and notice to the Secretary to do so ever was effected by Mr. Sumakeris. Therefore, although the decision by Mr. Sumakeris to opt out of the Survivor Benefit Plan pursuant to section 711(c) may have been accompanied by defective notification to plaintiff, there also was no notice of an election to provide Mrs. Sumakeris with survivor benefits sent to the Secretary within one year of the date of the divorce decree, as required.

■ Furthermore, Mrs. Sumakeris, who was represented by counsel in her divorce proceedings, also did not obtain a judgment that Survivor Benefit Plan annuities be included in the equitable distribution order issued on September 16, 1988. If there had been a court order as part of the terms of the divorce that Mr. Sumakeris make a former spouse election to provide survivor benefits to Mrs. Sumakeris, Mrs. Sumakeris would have had one year from the date of the Equitable Distribution Order, or, in the instant case, until September 16, 1989, to submit a written request to the Secretary of the Army that the election be deemed to have been made, pursuant to 10 U.S.C. § 1450(f)(3)(A). That provision states as follows:

(3)(A) If a person described in paragraph (2) or (3) of section 1448(b) of this title enters, incident to a proceeding of divorce, dissolution, or annulment, into a written agreement to elect under section 1448(b) of this title to provide an annuity to a former spouse and such agreement has been incorporated in or ratified or approved by a court order or has been filed with the court of appropriate jurisdiction in accordance with applicable State law or if such person is required by a court order to make such an election, and such

person then fails or refuses to make such an election, such person shall be deemed to have made such an election if the Secretary concerned received a written request, in such manner as the Secretary shall prescribe, from the former spouse concerned requesting that such an election be deemed to have been made and receives a copy of the court order, regular on its face, which requires such election or incorporates, ratifies, or approves the written agreement of such person or receives a statement from the clerk of the court (or other appropriate official) that such agreement has been filed with the court in accordance with State law.

In the instant case, the court orders establishing the divorce and the equitable distribution are silent on the issue.

Therefore, despite errors on the part of the defendant in this case regarding notification and counseling of the plaintiff regarding her former husband's election to withdraw from the Survivor Benefit Plan, pursuant to section 711(c) of the Survivor Benefit Plan Amendments of 1985, the plaintiff, nonetheless, is ineligible to receive the survivor benefits she seeks in this litigation.

### *CONCLUSION*

After careful review of the record before this court, the court concludes that the defendant has met its burden of proof on summary judgment. Plaintiff, Mary E. Sumakeris, is not eligible to receive Survivor Benefit Plan benefits as a former spouse. Defendant's motion for summary judgment is GRANTED. The Clerk of this Court is directed to dismiss plaintiff's complaint and to enter judgment in accordance with this decision.

**IT IS SO ORDERED.**