**Carol A. STOLPE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–477 C.

United States Court of Federal Claims.

Aug. 15, 1996.

George M. Chuzi, Kalijarvi, Chuzi & New-man, P.C., Washington, D.C., Walter T. Featherly, Koval & Featherly, P.C., Anchorage, Alaska, for plaintiff.

Agnes M. Brown, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director James M. Kinsella, Department of Justice, Washington, D.C., for defendant.

## Introduction

WIESE, Judge.

Plaintiff, Carol A. Stolpe, claims entitlement to a survivor annuity under the military's Survivor Benefit Plan ("Plan"). Plaintiff's husband, Captain John Stolpe, now deceased, retired from the Public Health Service in 1984 and, at that time, elected not to provide a survivor annuity for his wife. Plaintiff's basic contention in this suit is that her husband's election not to participate in the Plan was invalid because the Government failed to comply with the statutory provision that requires spousal notice and counseling before a member of the armed forces may opt out of the Plan. More specifically, for purposes of this opinion, we take plaintiff's position to be that, although defendant may have notified her of her husband's election, it did not counsel her adequately. Because she believes her husband's election was invalid, plaintiff claims that defendant is improperly withholding survivor benefits from her.

The case is now before the court on cross-motions for summary judgment. The parties have filed written briefs and oral argument was heard on August 6, 1996. For the reasons set forth below, we grant plaintiff's motion.

## Background

Congress established the Survivor Benefit Plan, 10 U.S.C. §§ 1447–1455 (1994), to provide benefits to the survivors of military retirees. *Passaro v. United States,* 774 F.2d 456, 457 (Fed.Cir.1985). Under the Plan, the Government withholds a specified amount from a retired servicemember's pay and uses that money to fund an annuity that becomes payable to the member's survivors upon the member's death. *Id.* A servicemember with a spouse or dependent child is automatically enrolled in the Plan unless, before the date of his or her retirement, that member affirmatively elects not to participate in the Plan. 10 U.S.C. § 1448(a)(2) (1994). Upon the servicemember's retirement, the election becomes irrevocable. 10 U.S.C. § 1448(a)(4) (1994). The Plan covers, among others, officers of the Public Health Service. *See* 42 U.S.C. § 213(a) (1994).

Captain Stolpe and plaintiff were married in 1958. In that same year, Captain Stolpe joined the Public Health Service and there began his career as a dentist. On April 1, 1984, he retired from active service. Before the date of his retirement, Captain Stolpe elected not to participate in the Plan. To effect this change, he submitted a completed copy of the Survivor Benefit Plan Election Certificate to the Public Health Service. On that form, he indicated his election by checking the box marked "No" in response to the question "Do you want an annuity under the Survivor Benefit Plan[?]"

According to the Public Health Service's regulations, the election certificate must include the signature of the servicemember's spouse if the member has elected not to participate in the Plan. The relevant regulation reads in pertinent part as follows:

> The witnessed signature of the spouse is required on the election form when an officer elects not to participate in [the Plan] or elects less than maximum coverage. The signature is required in accordance with the statutory requirement that the spouse must be notified of an election made under these circumstances.

The election certificate submitted by Captain Stolpe complies with this regulation: plaintiff's signature appears on the bottom of the form, beside Captain Stolpe's signature, and below a statement that reads: [1]

> This is to certify that I am aware of my spouse's election under the Survivor Benefit Plan as set forth above[.]

In plaintiff's affidavit, she claims—and defendant does not dispute—that, other than requiring plaintiff's signature on the election certificate, the Government did not formally notify her of her husband's election or, more importantly, explain the effects of that election to her. The Government does point out, however, that both plaintiff and Captain Stolpe were offered ample opportunity to attend seminars that provided counseling regarding retirement planning. Although defendant does not know whether plaintiff (or Captain Stolpe) ever attended such a seminar, Public Health Service records indicate that in 1982, two years before his retirement, Captain Stolpe registered to attend such a seminar along with his wife.

In 1992, plaintiff and her husband decided to terminate their marriage. About that time, plaintiff consulted an attorney to determine how a divorce might affect her financial situation. After an investigation into the couple's financial affairs, plaintiff's attorney informed her that Captain Stolpe had opted out of the Survivor Benefit Program. Plaintiff maintains that, before this time, she was completely unaware of her husband's election and its consequences.[2] In 1993, Captain Stolpe suffered a heart attack and died. Although plaintiff and Captain Stolpe had intended to seek a divorce, they had not done so as of the time of Captain Stolpe's death.

Shortly after Captain Stolpe's death, the Public Health Service informed plaintiff that she was not entitled to receive survivor benefits under the Plan. Plaintiff disputed this determination and, accordingly, attempted to establish her right to survivor benefits through the available administrative process. Specifically, plaintiff sought a correction of Captain Stolpe's military records based on her claim that Captain Stolpe's election not to participate in the Plan was invalid. After the Public Health Service denied her claim, plaintiff turned to this court.

---

**1.** Although plaintiff does not concede that she did, in fact, sign the document, we assume for purposes of deciding the motions before us that the signature on the election form is hers.

**2.** When plaintiff's counsel informed her of her husband's election, he also then advised her that retired servicemembers who had previously waived survivor benefits—like Captain Stolpe—would be able to reverse their election during a specially-enacted one-year readmission period extending between April 1, 1992, and March 3, 1993. After negotiations between plaintiff's attorney and Captain Stolpe's attorney, Captain Stolpe changed his election on March 29, 1993. However, as the Public Health Service informed plaintiff after Captain Stolpe's death, the change would have taken effect only if Captain Stolpe had made payments into the Plan for a minimum of two years. Since Captain Stolpe died less than one month after initiating the change in election, his attempt to opt into the Plan did not become effective. Because we find that Captain Stolpe's original election to opt out of the Plan was invalid, his unsuccessful attempt, in 1993, to re-enroll in the Plan is legally irrelevant.

## Discussion

As noted at the outset, plaintiff claims she is entitled to a survivor annuity because, she contends, her husband's election not to participate in the Survivor Benefit Plan was legally defective. The defect plaintiff sees in the election is that the Government did not formally notify her of the election or counsel her about its consequences, as required by statute. Because defendant's failure to satisfy these statutory requirements would, in fact, nullify Captain Stolpe's election and, correspondingly, preserve plaintiff's entitlement to a survivor annuity, plaintiff now asserts a demand for retroactive annuity payments. Defendant, on the other hand, resists liability because, in its view, the Public Health Service met all applicable statutory requirements.

In 1984, when Captain Stolpe retired, statutory requirements governing the Survivor Benefit Plan included the following spousal notice requirement:

> If a person who is eligible ... to participate in the Plan and who is married elects not to participate in the Plan at the maximum level ... that person's spouse shall be notified of that election.

10 U.S.C. § 1448(a)(3)(A) (1982).[3] The issue in this case centers on the substantive requirements necessary to a proper implementation of this provision.

■ Before turning to that issue, however, we set forth what is not contested. It is clear that this court has jurisdiction over plaintiff's claim. *See Barber v. United States,* 230 Ct.Cl. 287, 290–92, 676 F.2d 651, 654 (1982) and *Kelly v. United States,* 826 F.2d 1049, 1051–52 (Fed.Cir.1987). It is also clear that the Government's failure to satisfy the statutory notice requirement set forth in section 1448(a) has the effect of invalidating a servicemember's election not to participate in the Plan and, assuming no other impediments, entitles that member's survivors to full survivor benefits under the Plan. *Barber,* 676 F.2d at 657–60; *Kelly* at 1053.

Against this background then, we turn to the matter in dispute: whether the steps

taken by the Public Health Service to notify plaintiff *of her husband's election were* sufficient to meet section 1448(a)'s notice requirement. To resolve this issue, we must first determine what constitutes sufficient notice under the statute. After making that determination, we examine whether the Government's actions in this case met the statutory requirement.

■ Although the precise form and content of the notice required by section 1448(a) are not specifically spelled out in the statute, Congress did describe the type of notice it intended in that section of the statute which directs the President to issue regulations to guide the administration of the Plan. The section referred to, 10 U.S.C. § 1455(1) (1982), reads as follows:

> [The] regulations shall—
>
> (1) provide that, when the notification referred to in section 1448(a) of this title is required, *the member and his spouse shall,* before the date the member becomes entitled to retired or retainer pay, *be informed of the elections available and the effects of such elections*[.] [emphasis added].

This provision makes clear that Congress intended the required notice to include something more than bare notification of the fact that a certain election was about to be (or had been) made. Instead, the notice called for by the statute is intended not only to inform a spouse of the election contemplated by the retiring servicemember, but also to inform the spouse, before the member's actual retirement date, of "the elections available and the effects of such elections." Thus, to be sufficient under the statute, the notice must provide a servicemember's spouse both with an awareness of the servicemember's decision and an explanation of the consequences of that decision.

■ Our reading of the statutory language does no more than repeat the teaching of existing case law. In *Barber v. United States, supra,* an opinion binding on this court, the Court of Claims found that the notice required by the statute had to include, in addition to notice of the election itself,

---

**3.** Under the current version of the statute, a servicemember may elect not to participate in the Plan only with the consent of his or her spouse. 10 U.S.C. § 1448(a)(3) (1994).

counseling about its consequences. 230 Ct. Cl. at 297, 676 F.2d at 658. As the *Barber* court put it, section 1455 makes it "readily apparent ... that counseling was to be an integral part of the notice given to the spouse[.]" *Id; see also Sumakeris v. United States*, 34 Fed.Cl. 246, 253 (1995), *aff'd*, 95 F.3d 1163, 1996 WL 383929 (Fed.Cir.) (table), (July 8, 1996) and *McFarlane v. Secretary of the Air Force*, 867 F.Supp. 405, 410 (E.D.Va. 1994). After a thorough review of the statute and its legislative history, the *Barber* court concluded that the purpose of requiring notice and counseling was to make the spouse "fully aware of the implications of the [retiree's] decision." *Barber*, 676 F.2d at 658.[4] Based on the controlling case law and our own reading of the statute, it is clear that, in order to be legally sufficient, the notice required by the statute must provide the spouse at least with notice of the contemplated election and counseling about the implications of that election.

Defendant disagrees with our analysis of the law. In its view, counseling is not a statutory requirement. Although defendant acknowledges that the controlling case law, beginning with *Barber*, recognizes the Government's obligation to provide counseling as part of the required notice, defendant asserts that duty was founded not on the statute, but on the regulations at issue in those cases. Defendant points out that all the cases cited by plaintiff interpreting the Plan's notice requirement involved either the Army or the

Air Force. *See Trone v. United States*, 230 Ct.Cl. 904, 1982 WL 25268 (1982) and *Sumakeris v. United States*, 34 Fed.Cl. 246 (involving survivors of members who served in the Army) and *McFarlane v. Secretary of the Air Force*, 867 F.Supp. 405 (E.D.Va. 1994), *Barber v. United States*, 676 F.2d 651, *Kelly v. United States*, 826 F.2d 1049, and *Hart v. United States*, 910 F.2d 815 (Fed.Cir. 1990) (involving survivors of members who served in the Air Force). The point is significant, argues defendant, because the regulations of the Army and the Air Force do require counseling, while, as we have seen, the Public Health Service regulations do not.

Defendant's position misreads the statute and the controlling case law. It is true that some of the cases referred to by plaintiff discuss the relevant regulations; however, they do so only for the purpose of providing additional support for their conclusions. As previously noted, it is the statute itself that directs the Government to inform a spouse of "the elections available and the effect of such elections." As recognized in *Barber*, this statutory language is the source of the Government's counseling obligation. *See Barber*, 676 F.2d at 658.

■ The question that remains is whether defendant satisfied the statutory notice requirement in the present case. The operative facts are these: It is undisputed (at least for purposes of deciding the pending mo-

---

4. According to the *Barber* court, the legislative history "makes it very clear that Congress intended to prevent a serviceman's wife from learning for the first time that she was left without support at her husband's death, by providing her notice and participation in the counseling that was to precede a decision to elect out[.]" *Barber*, 676 F.2d at 656. The court relied on the following passage taken from the House Committee Report:

It is the intention of the Committee, therefore, that regulations designed to carry out this provision of the bill provide for counseling by competent officers for those about to retire who elect not to participate or elect to participate at less than the maximum level. It is further the intention of the Committee that the spouse of the member concerned will be present at the counseling session if possible or provided separate counseling as necessary to be made fully aware of the options available and the election made by her husband. It is

the intention of the Committee that in satisfaction of this requirement counseling officers shall certify, in the event the retiree elects not to participate or to participate at less than the maximum level, that counseling has been provided and shall present the spouse with a statement that specifies she has been counseled and indicates the counseling officer's satisfaction that she fully understands the implications of her husband's election. The spouse should be invited to sign the statement indicating she has been counseled and understands the decision. The counseling officer should stand ready to provide any further information that the retiree or the spouse may require.

... [The Committee] wishes responsibility clearly placed on administrative officers to see that full counseling has been provided as to the effect on survivors of an election not to participate or to participate at a reduced level.
H.R.Rep. No. 92–841, 92d Cong., 1st Sess. at 8–9 (1971).

tions) that Captain Stolpe submitted to the Public Health Service an election certificate bearing plaintiff's signature and, by doing so, fully complied with the Service's regulations regarding spousal notification. In addition to requiring—and obtaining—plaintiff's signature on the election certificate, the Public Health Service also sponsored retirement seminars, open to plaintiff, at which, we are told, the Plan was explained. With these facts in mind, plaintiff's primary contention is that, although the Public Health Service may have complied with its regulatory requirements, it violated the statutory requirement by failing to counsel plaintiff about the consequences of her husband's election.[5] In response to that contention, defendant argues that it took adequate steps to advise plaintiff of her rights.

Defendant first suggests that the text of the election certificate provided plaintiff with the required counseling. Defendant refers us to the information set forth on the reverse side of the form. In particular, our attention is directed to the following paragraphs:

2. *Elections Irrevocable:* If you are married and choose coverage for your spouse, you may not cancel your coverage after the effective date of your retirement. If you are married and elect not to participate or elect coverage for children only, you may not elect coverage for a spouse after retirement.

[and]

*Purposes and Uses:* The principal purpose for collecting this information is to enroll in the [Plan] at less than maximum limits, or to exercise the no coverage option. Information will be used to validate and record desired level of participation, and to notify, as required by law, the spouse that less than maximum coverage has been elected by the retiring officer.

Contrary to defendant's assertion, the quoted paragraphs do not provide the counseling contemplated by the statute. Recall that, in the words of the statute, the Govern-

ment must inform a spouse of "the elections available and the effect of such elections." 10 U.S.C. § 1448(a). As we have noted, the purpose of this requirement is to ensure that a spouse is made fully aware of the implications of the member's election. The language that appears on the election certificate is plainly inadequate to accomplish that purpose.

To begin with, the statements are inconspicuous—they appear on the reverse side of the form, in fine print, and the paragraph explaining that the election is irrevocable clearly speaks to the retiring servicemember rather than the member's spouse. More importantly, the statements do not provide the reader with enough information. Although the meaning of the paragraphs is plain enough, their significance would not be apparent to someone unfamiliar with the Survivor Benefit Plan. In order to make the reader fully aware of the financial implications of the election, the statements would need to be placed in context. That is what counseling is meant to accomplish. And this is what is missing here. The election form leaves many fundamental questions unanswered: What is the Survivor Benefit Plan? What is an annuity? What are the financial alternatives to an election? To be helpful to the uninformed reader, the form, at the minimum, would need to explain the background, the purpose, and the mechanics of the Survivor Benefit Plan.

Defendant's claim that the election certificate provides adequate spousal counseling is further weakened by the way that form comes to the spouse's attention. Congress, by requiring that the spouse receive counseling directly from the Government, clearly was expressing an unwillingness to rely on the retiring servicemember to educate his or her spouse about the election. Rather, Congress intended to provide the spouse with direct access to an independent and reliable source of information. *See Barber,* 676 F.2d

---

5. Plaintiff also argues that, even assuming plaintiff signed the Election Certificate, requiring plaintiff's signature on that form did not discharge defendant's duty to formally notify her of her husband's election (as distinct from counsel-ing her about that election). Because we find that defendant failed to provide the statutorily-required counseling, we do not reach the formal notice issue.

at 656–57 (quoting the relevant legislative history).

Therein lies the second problem we see in relying on the election certificate to "counsel" the spouse: Although the blank form is provided by the Government, it is (or, at least in this case, it was) presented to the spouse by the servicemember. If the spouse does not understand the form or has questions about its meaning, he or she has no one to turn to other than the servicemember. This arrangement raises the possibility that the spouse may unwittingly sign away the benefits of the Plan as a result of fraud, neglect, or misunderstanding—precisely the circumstances Congress was trying to guard against. *Barber* at 658. For these reasons—because the election certificate does not adequately convey the information required by the statute and because the certificate was presented to plaintiff by Captain Stolpe—we find that the election certificate was insufficient to provide plaintiff with the type of counseling contemplated by the statute.[6]

Defendant also suggests that it discharged its duty to counsel plaintiff by providing her with the opportunity to learn about the Survivor Benefit Plan by attending one of the retirement seminars available to her and her husband. Even assuming that plaintiff's attendance at a general retirement seminar shortly before her husband's election could satisfy the Government's counseling obligation, there is no evidence in the record to suggest that plaintiff ever attended one of these seminars or, for that matter, that she ever received notice of them. More to the point, there is no evidence that defendant ever advised plaintiff that she should attend such a seminar if she did not understand fully the election her husband intended to make under the Survivor Benefit Plan.

■ Because the Government did not provide plaintiff with counseling, it failed to sat-

isfy the notice requirement established in section 1448(a). As noted earlier, such a failure renders invalid a servicemember's election not to participate in the Plan and entitles the member's survivors to full survivor benefits. Accordingly, we hold that plaintiff is entitled to full survivor benefits measured from the date of Captain Stolpe's death. In the computation of the amount due her, plaintiff's award is to be reduced by the amount that would have been withheld, as contributions to the plan, from Captain Stolpe's retirement pay from the date of his retirement until his death. *See Trone v. United States,* 230 Ct.Cl. 904, 907, 1982 WL 25268 (1982) and *McFarlane v. Secretary of the Air Force,* 867 F.Supp. 405, 409 n. 4 (E.D.Va.1994).

■ Plaintiff also makes a claim for fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (1994). Under the EAJA, this court must award fees and expenses to a prevailing party unless the position taken by the United States was substantially justified or special circumstances make an award unjust. *Id.* The test of whether the Government's position was substantially justified is whether that position was reasonable in light of all the pertinent facts. *Gava v. United States,* 699 F.2d 1367, 1370 (Fed.Cir.1983). Where the law is unsettled or the issues are of first impression, the Government's defense of a case arising from an administrative decision is reasonable where it is not clear that the administrative decision was erroneous. *Id.* at 1371.

■ In this case, we find the position taken by defendant, when examined in light of all the pertinent facts, to be reasonable. Although controlling case law had resolved many of the potential issues in this case, defendant did not defend this lawsuit by refusing to recognize that settled law. Rath-

---

**6.** Defendant asserts that the particular institutional characteristics of the Public Health Service—service in geographically isolated areas, for example—make it impractical to provide spousal counseling in the manner offered by the Army or the Air Force. Although we find the procedure followed by the Public Health Service inadequate in this case, we do not mean to suggest that the statute necessarily requires face-to-face counseling. Surely, the Public Health Service is capable of developing a procedure that can ensure that the required information is conveyed, in comprehensible form, directly to the spouses of those servicemembers who elect not to participate in the Plan.

er, defendant took the defensible—although ultimately incorrect—position that those principles of settled law did not apply to the facts presented by this case. In particular, defendant stressed two potentially significant differences between this case and those decided earlier. First, in all the cases cited by plaintiff in which the plaintiffs prevailed, the plaintiff-spouses had not received any notice of the servicemember's election.[7] In this case, however—assuming plaintiff signed the election certificate—there is evidence that plaintiff was or should have been aware that her husband had made an election under the Survivor Benefit Plan. Thus, the pivotal issue in the case, at least as it was framed for summary judgment, was not whether plaintiff had received notice, but whether failure to provide counseling rendered that notice insufficient. The second distinction emphasized by defendant (and discussed above) is that, in previous cases, the regulations at issue set forth specific counseling requirements; in this case, by contrast, the Public Health Service fully complied with its own regulations, which did not require counseling.

We have also taken into account the efficient manner in which the Government litigated this case. The Government has, for the most part, limited its arguments to legitimate, and what it reasonably saw as significant differences between this and previous cases. As a result, the court was able to dispose of the case by summary judgment without undue delay. An award of attorney's fees is therefore not warranted.

### Conclusion

Because defendant failed to counsel plaintiff about the effects of Captain Stolpe's election not to participate in the Survivor Benefit Plan and because that failure rendered Captain Stolpe's election invalid, we grant plaintiff's summary judgment motion and correspondingly deny defendant's cross-motion for summary judgment. However, because we find that the position taken by the Government in this case was substantially justified, we deny plaintiff's additional request for relief under the Equal Access to Justice Act. The amount of the judgment to be entered shall be based on a stipulation to be filed by the parties within 30 days from the date of this opinion.

---

**7.** Although the plaintiff in *McFarlane* signed her husband's election certificate, she *did so only in the capacity of a witness*. *McFarlane* at 412. We read as dicta that court's further observation that actual notice would not, by itself, discharge the Government's statutory obligation. *Id.* at 410 n. 6.