**Sarah E. KING, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 00–660C.**

United States Court of Federal Claims.

April 29, 2005.

---

Anthony W. Walluk, San Antonio, Texas, for plaintiff.

Sonia M. Orfield, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Deputy Director, all of Washington, D.C., for defendant. Lt. Col. Chris Clark, United States Air Force, Arlington, Virginia, of counsel.

### OPINION AND ORDER

WOLSKI, Judge.

Plaintiff Sarah E. King brought this action alleging that the Air Force Board for Correction of Military Records ("AFBCMR" or "Correction Board") acted arbitrarily, capriciously, contrary to law, or without the support of substantial evidence, when it reconsidered its correction of retired Air Force Master Sergeant ("MSgt.") Henry J. King's military records. The AFBCMR had initially determined that the records should reflect that MSgt. King had timely enrolled plaintiff, his former spouse, for a survivor's annuity as per their divorce decree. At the request of MSgt. King's widow, Joyce King, the AFBCMR reversed itself on the ground that plaintiff's failure to inform the AFBCMR of state court litigation constituted fraud. Defendant United States ("Government") has moved to dismiss Sarah King's complaint for failure to state a claim upon which relief can be granted or, in the alternative, for judgment on the administrative record. The Government argues that plaintiff is not entitled to benefits under the applicable statute, and that the Correction Board's reconsideration was proper. For the reasons discussed below, the Government's motions are DENIED.

## I. BACKGROUND

On September 21, 1972, Congress enacted the Survivor Benefit Plan, 10 U.S.C. §§ 1447–1455 ("SBP"), establishing a new system of benefits for the survivors of military retirees. Prior to the SBP, the Retired Servicemen's Family Protection Plan, 10 U.S.C. §§ 1431–1446 ("RSFPP"), covered service members who elected to participate; the RSFPP remained in place for those who chose not to switch over to the SBP. MacConnell v. United States, 217 Ct.Cl. 33, 36, 1978 WL 5756 (1978). For those service members who had retired prior to the enactment of the SBP, an open enrollment period of one year from the enactment of the SBP was available for those who wished to participate. 10 U.S.C. § 1455(3)(b).

Under the RSFPP, the default position was no coverage, and Congress found that this resulted in too few service members securing death benefits for their families. See Passaro v. United States, 774 F.2d 456, 457 (Fed.Cir.1985). The opposite default rule was adopted in the SBP, and thus retiring service members were automatically en-

rolled in the SBP. Service members may, however, elect not to participate, elect to provide less than maximum coverage, or elect to provide the SBP benefits to a dependent child rather than a spouse. 10 U.S.C. § 1448(a)(3)(A). The statute currently[1] requires the spouse's consent for such elections to be made, 10 U.S.C. § 1448(a)(3)(A), unless the couple were married after the service member's initial eligibility, in which event the new spouse must merely be notified of the election. 10 U.S.C. § 1448(a)(6)(D). A service member who elects spousal coverage and later divorces may elect to provide SBP coverage for his former spouse. A former spouse election must be "written, signed by the person making the election, and received by the Secretary concerned within one year after the date of the decree of divorce, dissolution, or annulment." 10 U.S.C. § 1448(b)(3)(A)(iii). Alternatively, if a participant is required by a court order[2] to elect former spouse coverage and refuses or fails to do so, the former spouse may request that the election be deemed to have been made. 10 U.S.C. § 1450(f)(3)(A). In order to effect such an election, the former spouse must submit a written request and a copy of a court order requiring former spouse coverage, within one year of the date of the court order. 10 U.S.C. § 1450(f)(3).

Retired Air Force Master Sergeant Henry J. King and the plaintiff, Ms. Sarah E. King, were married on June 14, 1952. Compl. ¶ 4; Admin. R. 8, 22. Master Sgt. King retired from the Air Force effective January 1, 1969. Compl. ¶ 2; Admin. R. 8, 30. Effective September 21, 1972, MSgt. King elected to participate in the Survivor Benefit Plan during the SBP's initial open enrollment period. Admin. R. 8, 20, 30. His election was for "spouse only" coverage based on full retire-

ment pay, and he identified Sarah King by name, date of birth, date of marriage, and social security number. Admin. R. 20.

Sarah King and MSgt. King were divorced on May 29, 1985. Compl. ¶ 5; Admin. R. 8, 22. As part of their divorce agreement, Sarah King was to receive all of MSgt. King's retirement annuity and survivor benefits. Compl. ¶ 6; Admin. R. 14.[3] Payment of the survivor benefits premia was to come out of the retirement annuity payment. Compl. ¶ 9; Admin. R. 14–15. Following the divorce, Sarah King began receiving MSgt. King's retirement pay, less the premium for the survivor benefit plan, by way of deposit to an account established for that purpose. Admin. R. 63–64. Neither MSgt. King nor the plaintiff ever changed the status of the SBP coverage from "spouse" to "former spouse." Compl. ¶ 7; Admin. R. 8.

On January 11, 1986, MSgt. King remarried. Compl. ¶ 11; Admin. R. 8. MSgt. King did not notify the finance center of his marriage, nor request that his SBP beneficiary be changed to his new wife, Joyce King. Compl. ¶ 12; Admin. R. 8. Joyce King knew that any survivor benefits were to go to Sarah King per the divorce decree that made the second marriage possible. Admin. R. 55, 105. Although his pay records were updated in 1987 as the result of a finance center project, the records continued to reflect Sarah King's date of birth as that of the eligible spouse beneficiary. Compl. ¶ 10; Admin. R. 8. In fact, Sarah King's date of birth remained on the records as that of the eligible beneficiary until at least December 6, 1993. Compl. ¶ 10; see also Admin. R. 329–30 (MSgt. King's monthly retirement account statement, dated December 6, 1993, reflecting Sarah King's date of birth as that of the

---

1. Prior to the enactment of amendments in 1985, Pub.L. No. 99–145, section 721(a)(2), spouses merely had to be notified of the decisions not to participate or to reduce benefits. *See Passaro*, 774 F.2d at 457.

2. Court order is defined as "a court's final decree of divorce, dissolution, or annulment or a court ordered, ratified, or approved property settlement incident to such a decree . . . ." 10 U.S.C. § 1447(13)(A) (2004).

3. Sarah and Henry King's divorce agreement stated the following:
   The Plaintiff [Sarah E. King] shall have all rights to and shall receive the entirety of the Defendant's [Henry J. King's] Air Force Retiree Annuitant account . . . . Plaintiff shall also receive, and the Defendant agrees that Plaintiff shall receive, the survivor benefits from the Air Force in the event of his death, deduction for which survivor's benefits is presently being made from the Air Force Annuitant account. Admin. R. 14–15.

eligible spouse beneficiary of MSgt. King's SBP benefits).

MSgt. King died on November 9, 1994. Admin. R. 8, 18–19, 21. After his death, the personnel branch at Dobbins Air Force Base advised his widow, Joyce King, that she, as the surviving spouse, was entitled to receive MSgt. King's survivor's benefits. Admin. R. 57, 110. Joyce King then applied for, and began receiving, MSgt. King's SBP annuity, which Sarah King's money had paid for. Compl. ¶ 13; Admin. R. 8, 110. Extensive litigation between Sarah King and Joyce King then ensued.

### A. State Court Litigation

On March 2, 1995, Sarah King filed suit in the Superior Court of Cobb County, Georgia, seeking to establish her entitlement to the SBP benefits. Compl. ¶ 14; Admin. R. 31, 62. During proceedings in that suit, Joyce King testified that she was aware that Sarah King was to receive the SBP benefits pursuant to MSgt. King and Sarah King's divorce decree. Admin. R. 55, 105. Joyce King, nevertheless, contended that she was entitled to the SBP benefits because Sarah King had waived her rights to those benefits by failing to timely notify the proper authorities. Admin. R. 74, 91. The court awarded Sarah King the SBP benefits on June 12, 1996. Compl. ¶ 14; Admin. R. 218. That decision, however, was overturned on appeal by the Court of Appeals of the State of Georgia on the grounds that federal law preempted state law and, therefore, Joyce King was the proper beneficiary. Compl. ¶ 15; Admin. R. 251; King v. King, · 225 Ga.App. 298, 483 S.E.2d 379, 383 (1997).

After losing her superior court case on appeal, Sarah King brought suit in the Probate Court of Cobb County. Joyce King had served as the executrix of MSgt. King's estate, and the suit alleged that Joyce King practiced a fraud upon the probate court by failing to pay Sarah King the survivor benefits for which the estate was liable. Admin. R. 234–35. On August 7, 1997, the probate court reopened MSgt. King's estate because

litigation was pending at the time that Joyce King had filed for letters of dismission. Admin. R. 253. The probate court reissued the letter of dismission on December 9, 1997, finding that Joyce King had fully discharged her duties, as litigation was no longer pending. Admin. R. 268–69.

On December 5, 1997, Sarah King filed a second lawsuit in superior court, this time alleging a breach of contract by Joyce King, in her capacity as executrix, based on failure to provide her with the SBP benefits promised under the divorce agreement. Admin. R. 276. The court granted Joyce King summary judgment. Admin. R. 285. Following that suit, Joyce King, on January 8, 1998, filed a complaint in superior court alleging that Sarah King's "unrelenting court attacks upon [Joyce King] are malicious and designed to harass her." Admin. R. 304. The case was tried to a jury and Joyce King did not prevail. Admin. R. 56.

### B. Correction Board Proceedings

After the Georgia Court of Appeals decision, Sarah King's counsel became aware of the equitable powers of the AFBCMR. Compl. ¶ 16.[4] On June 9, 1997, Sarah King submitted an Application for Correction of Military Record Under the Provision of 10 U.S.C. § 1552, DD Form 149. Admin. R. 10. The application requested that MSgt. King's military record be corrected "to show Sarah Evelyn King, former spouse of MSgt. King, to be the beneficiary of MSgt. King's survivor benefits." Admin. R. 10. The application stated that the record was in error because "[p]ursuant to Final Judgment and Decree of Divorce dated April 23, 1985, Sarah Evelyn King is to receive all [A]ir [F]orce survivor's benefits of MSGT Henry J. King." Admin. R. 10. Furthermore, the application noted that "[a]s the deceased did not change Sarah King's name as recipient of said benefits; her social security number, or date of birth from Sarah King to his subsequent wife, it is evident that MSGT King intended Sarah King to be his beneficiary of such benefits." Admin. R. 10. The Board

---

4. Plaintiff's broader claim that her counsel first became aware of the AFBCMR's existence at that time, Complaint ¶ 16, is contradicted by that

counsel's letter to Joyce King dated February 16, 1995, which specifically mentions the Board. Admin. R. 60.

granted Sarah King's request on September 9, 1998, when it determined that MSgt. King's military records should be "corrected to show that on 1 March 1986, he changed his Survivor Benefit Plan (SBP) election from spouse coverage to former spouse coverage based on reduced retired pay, naming Sarah E. King as the former spouse beneficiary." Admin. R. 4–9; Compl. ¶ 17. On March 16, 1999, the Board issued a revision of this determination, reflecting MSgt. King's election of coverage based on *full retired pay.* Admin. R. 3.

Joyce King was allegedly unaware of Sarah King's Application for Correction of Military Record until July 9, 1999, when she received a letter from the Defense Finance Accounting Service ("DFAS") indicating that she had to repay the survivor's benefits she had received. Admin. R. 3. After receiving this letter she sought reconsideration of the Board's decision to award the SBP benefits to Sarah King on the grounds that her entitlement to MSgt. King's benefits had been fully adjudicated in state court and that Sarah King had not brought this fact to the Board's attention. Admin. R. 31, 34–35. In a August 19, 1999 letter to the AFBCMR, Joyce King's attorney argued that Sarah King's "[f]ailure to disclose pending or finally litigated matters seemingly would be … a violation" of 18 U.S.C. § 287, the statute providing for criminal punishment for presenting false or fraudulent claims. Admin. R. 35. Although Joyce King did not file a DD Form 149, in response to this letter the AFBCMR reconsidered the correction of MSgt. King's military record.

Notice of the reconsideration of the correction of MSgt. King's military record was not received by either Sarah King or her former counsel. Compl. ¶ 18; Admin. R. 334. The AFBCMR asserts that notice of the reconsideration was sent to plaintiff's former counsel, Donald L. Mize, on September 14, 1999. Admin. R. 53. The AFBCMR did not send the

notice directly to Sarah King, nor did it send the notice by certified or registered mail.

On February 3, 2000, without receiving a response from Sarah King, the AFBCMR concluded, by a vote of two-to-one, *see* Admin. R. 33, that the "initial application for correction of the records of the decedent, submitted by the former spouse, was fraudulent within the meaning of Title 10, United States Code, Section 1552(a)(4) and that the earlier-directed correction to the records should be set aside." Admin. R. 32. The Board concluded that the initial application was fraudulent because Sarah King "applied to the Board just months after losing in court and failed to bring to the Board's attention this important fact." *Id.* The Board opined that "had the Board know about the state litigation, a different decision may have been reached." *Id.*[5]

After the AFBCMR overturned its September 9, 1998 decision awarding Sarah King the SBP benefits, DFAS began collection efforts against Sarah King to recover the survivor benefits paid to her under the initial decision. Compl. ¶ 23; Admin. R. 305. As part of those collection efforts the Department of the Treasury began offsetting Sarah King's Social Security benefit payments to repay the debt. Pl. Response 7–8; Ex. B to Pl. Response.

Prior to filing suit in this Court, on May 24, 2000, Sarah King requested that the AFBCMR void its February 3, 2000 decision and reinstate its September 9, 1998 decision that, in effect, awarded her the SBP benefits. Compl. ¶ 19; Admin. R. 310–17. Proceedings in this Court were stayed pending the outcome of that reconsideration. On March 24, 2004, the AFBCMR ruled that it was precluded from granting Sarah King's request to correct MSgt. King's military records, stating it "cannot rule on a dispute between two claimants to a benefit only one of them can receive … this task is best left to the courts."[6] Admin. R. 366.

---

5. The Board panel on reconsideration differed by one member from the three-member panel which initially corrected MSgt. King's records. *Compare* Admin. R. 7 *with id.* 33. The two members who served on both panels split on the question of reconsideration. Admin. R. 33.

6. This conclusion rested on a memorandum from the Office of the Judge Advocate General, U.S. Department of the Air Force, which in turn relied on dictum from a Court of Claims opinion, *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984 (1979) concerning 10 U.S.C. § 1552(a)(2). *See* Admin. R. at 366–68. Defen-

## II. DISCUSSION

The government has moved to dismiss Sarah King's Complaint under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), for failure to state a claim upon which relief can be granted. In the alternative, the Government has moved for judgment on the administrative record, under RCFC 56.1.

### A. Standard of Review

The granting of a motion to dismiss for failure to state a claim under RCFC 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002). When considering a motion to dismiss under RCFC 12(b)(6) the "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Court review of military benefits decisions involving Correction Boards typically are based on an administrative record consisting of the documents and evidence that were before the Correction Board, any transcripts of proceedings, and the documents memorializing the board's determinations. *See Bishop v. United States,* 26 Cl.Ct. 281, 285 (1992); *see also* 32 C.F.R. § 865.4(m) (identifying necessary contents of a record of proceedings

before the AFBCMR).[7] A motion for judgment on the administrative record, pursuant to RCFC 56.1, requires the Court to review an administrative decision to determine whether it is supported by an already-existing administrative record. The Court reviews this record to determine whether the administrative body acted in a manner that was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *See Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir. 2004); *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986); *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984 (1979); *Sanders v. United States,* 219 Ct.Cl. 285, 298–99, 594 F.2d 804 (1979).

A motion under RCFC 56.1 for judgment upon the administrative record differs from a motion for summary judgment under RCFC 56, as the existence of genuine issues of material fact does not preclude judgment under the former. *Compare* RCFC 56.1(a) (incorporating only the standards of RCFC 56(a)-(b)) *with* RCFC 56(c) (containing the disputed facts standard). A motion for judgment on the administrative record examines whether the administrative body, given all the disputed and undisputed facts appearing in the record, abused its discretion. *See Gulf Group Inc. v. United States,* 61 Fed.Cl. 338, 350 (2004); *Tech Systems, Inc. v. United States,* 50 Fed.Cl. 216, 222 (2001). Here, the Government is the moving party and it, therefore, must show that there is substantial evidence in the record supporting the Air Force's reconsideration of its September 9,

---

dant concedes, as it must, that this statutory provision is not applicable to the above-captioned case. *See* Deft.'s Reply at 3–4 n. 1.

**7.** Our Court's convention of restricting review to the administrative record seems to conflict with the express holding of the Federal Circuit that plaintiffs challenging Correction Board determinations are "entitled" to supplement this record with additional evidence. *See Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983) ("Appellant was entitled to offer de novo evidence in his presentations ... to the district court."); *id.* at 1156 (holding that the same precedents should apply to our Court and district courts in this area). This practice also rests, in part, on Supreme Court jurisprudence concerning the Ad-

ministrative Procedure Act (APA), 5 U.S.C. § 701 *et seq. See, e.g., Bishop,* 26 Cl.Ct. at 285; *Long v. United States,* 12 Cl.Ct. 174, 177 (1987). This jurisprudence, in turn, appears to rest on a misreading of the legislative history of the APA. *Gulf Group Inc. v. United States,* 61 Fed.Cl. 338, 350 n. 25 (2004). In any event, the substantial evidence standard in military benefits cases is primarily derived from the deference courts afford to military judgment in military matters, *see Heisig,* 719 F.2d at 1156. Although the ultimate issue in this case is which of two civilians should receive survivor benefits—an issue which is unconnected to specialized military knowledge—the standard of review has not been raised as a disputed issue by the parties.

1998 decision, and that it was not arbitrary, capricious, contrary to law, or an act of bad faith to reverse the correction of MSgt. King's military record.[8] Even if the record contains evidence supporting the contrary conclusion, a Correction Board's decision cannot be reversed on that basis if substantial evidence also is found to support it, as it is not this Court's role to substitute its judgment for that of the Correction Board: "the standard of review does not require a re-weighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157. *See also Sanders,* 219 Ct.Cl. at 302 ("we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions").[9]

### B. Motion to Dismiss

The Government moves to dismiss Sarah King's case, arguing that she has not alleged facts that would entitle her to former spouse benefits under the SBP. Defendant relies primarily on cases from our Court which were dismissed because neither the retired service members nor their former spouses made the requisite elections under 10 U.S.C. §§ 1448(b)(3) and 1450(f)(3). *See* Def.'s Mot. at 20–23 (discussing *Pence v. United States,* 52 Fed.Cl. 643 (2002); *Woll v. United States,* 41 Fed.Cl. 371 (1998); and *Sumakeris v. United States,* 34 Fed.Cl. 246 (1995)). But this reliance is misplaced. It has not only been alleged, but cannot be disputed, that Air Force records indicated that MSgt. King timely elected former spouse coverage under the SBP. Compl. ¶ 17; Admin. R. 2 (stating that "on 1 March 1986, he changed his Sur-

vivor Benefit Plan (SBP) election from spouse coverage to former spouse coverage based on full retired pay, naming Sarah E. King as the former spouse beneficiary").

■ It is true that MSgt. King's records reflected this election only because of the correction initially ordered by the AFBCMR, and that the AFBCMR subsequently reconsidered and voided the correction. *See* Admin. R. 2, 29, 32. This does not, however, mean that a claim has not been properly stated under the SBP statute. Rather, it places Sarah King in the same situation as someone whose election was timely submitted but not accepted by the Secretary for whatever reason, and then not corrected by the AFBCMR. The latter individual would certainly state a claim by challenging the decision to not recognize the election, and Sarah King does the same here in challenging the reversal by the AFBCMR. The Court holds that when a Correction Board makes a correction that triggers payments to an individual under a money-mandating statute, that individual has a claim in our Court for those benefits when the Board later reverses itself.

Moreover, in light of the cases upon which the Government relies, it cannot be said that the AFBCMR acted improperly in initially correcting the record to reflect MSgt. King's election of former spouse coverage. Sarah King's circumstances differ from those of the plaintiffs in these other cases in critical and material ways. In two of the three cases, the retired service member submitted a written request to discontinue participation in the SBP—one after the divorce was finalized,

---

8. This case is in a somewhat unusual posture in that typically there will be cross-motions for judgment on the administrative record, with the plaintiff seeking to show an absence of substantial evidence supporting the challenged decision, the defendant seeking to show that such evidence exists, and one or the other necessarily prevailing.

9. As noted above, *see* n. 7, the deference to military judgment is based on the separation-of-powers principle that military matters are not the proper province of the courts. *See, e.g., Doe v. United States,* 132 F.3d 1430, 1434 (Fed.Cir. 1997) ("decision who is or is not fit to serve . . . is generally entitled to great deference"); *Stephens v. United States,* 174 Ct.Cl. 365, 372, 358

F.2d 951 (1966) ("The Court will not substitute its judgment for that of the armed services in determining general fitness for military duty.") (citations omitted); *Wronke,* 787 F.2d at 1576 (deference to Army interpretation of its own regulations is "especially appropriate . . . where the Army was determining the suitability of a commissioned officer") (citations omitted); *see also Chappell,* 462 U.S. at 305, 103 S.Ct. 2362 ("courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have") (quotation omitted). It is at least questionable whether the determination challenged in this case is due the same sort of deference.

and the other after the divorce process commenced. *Woll,* 41 Fed.Cl. at 372; *Sumakeris,* 34 Fed.Cl. at 249.[10] In contrast, MSgt. King never gave any indication that he wanted to terminate participation in the SBP program.[11] In all three of the other cases, the service members retired after the creation of the SBP, and thus their spouses were automatically covered unless the service member affirmatively opted out of the plan. *See Pence,* 52 Fed.Cl. at 644; *Woll,* 41 Fed. Cl. at 372; *Sumakeris,* 34 Fed.Cl. at 248-49. But MSgt. had retired before the creation of the SBP, and thus affirmatively enrolled in the plan specifically to provide coverage for his then-wife Sarah. Admin. R. 20.

Another important difference is the manner in which the various divorce decrees dealt with the SBP program. In *Sumakeris,* these benefits were not included in the court order. 34 Fed.Cl. at 256. In *Woll* and *Pence,* the former spouse was awarded a percentage (thirty-eight and fifty percent, respectively) of the service member's pension, and also the right to receive these benefits after the service member's death, but the SBP annuity was not specifically mentioned. *Woll,* 41 Fed.Cl. at 372; *Pence,* 52 Fed.Cl. at 648. The Kings' divorce decree explicitly and unambiguously stated that Sarah King must receive not only the *entire* pension of MSgt. King, but also the "the survivor's benefits from the Air Force in the event of his death, deduction for which survivor's benefits is presently being made from the Air Force Retirement Annuitant account." Admin. R. 14-15.

This is significant for several reasons. Most obviously, it helped inform the Board of MSgt. King's intent. *See* Admin. R. 8-9. The decree also identified the deductions that were paying the premia for the survivor benefit, as coming from money that belonged not to MSgt. King but to Sarah King. It is undisputed that these deductions continued to be taken from the retirement benefits belonging to Sarah King under the divorce decree. *See, e.g.,* Admin. R. 141-42, 327, 329-30; *see also id.* 226-27 n. 2; *King,* 483 S.E.2d at 382 n. 2. Thus, unlike the other cases, the benefits at issue were actually paid for by the plaintiff. Moreover, Sarah King had reason to believe that her former husband made his required election of former spouse coverage, as the deductions from the retirement benefits that were her property continued.[12] After all, it would hardly be constitutional for the Government to take her property to pay for benefits for her ex-husband's new spouse. *Cf. Wilkinson v. Leland,* 27 U.S. (2 Pet.) 627, 658, 7 L.Ed. 542 (1829) ("We know of no case, in which a legislative act to transfer the property of A. to B. without his consent, has ever been held a constitutional exercise of legislative power in any state in the union."). And finally, unlike the other cases, the payment of the requisite premia and the existence of an alternative beneficiary meant that *someone* was going to receive the benefits—the Board was not presented with the question of whether to incur additional liability to the treasury.

Indeed, in weighing the equities, this is a case in which there is absolutely nothing on the opposite side of the scales. The widow of MSgt. King even knew that the divorce decree that allowed him to marry her provided that Sarah King was to receive the entire pension and the survivor benefits. Admin. R. 55, 105. And the retirement benefit statements continued to list *Sarah King's* date of birth as the date of birth of the SBP beneficiary. *Compare* Admin. R. 142 *with id.* 20. The initial Board decision could hardly be considered arbitrary or an abuse of discretion.[13]

---

10. In the third case, the divorce occurred before Congress created the former spouse coverage option. *Pence,* 52 Fed.Cl. at 645.

11. Perhaps this is because, as is discussed below, he had no interest in withdrawing since the benefits were financed using Sarah King's money, not his.

12. Further, under the SBP, the deduction for the survivor benefit premium "shall not be applicable during any month in which there is no eligible spouse or former spouse beneficiary." 10 U.S.C. § 1452(a)(3). Since MSgt. King had no spouse for a little over seven months after divorcing Sarah King, yet the reductions from the retirement benefits continued, Sarah King would have had even more reason to believe that her ex-husband made the required election.

13. This is all the more clear when one considers the confusing and self-defeating nature of the statutory scheme with respect to which the AFBCMR made the correction. If the service

■ When the AFBCMR corrected MSgt. King's military record to reflect that on March 1, 1986, MSgt. King elected former spouse coverage, it vested Sarah King with an enforceable right to her late ex-husband's SBP benefits. In other words, when the AFBCMR made its determination, the election occurred and Sarah King was like any other former spouse whose ex-husband made an election within one year of a final divorce decree. This Court has the authority to review whether the AFBCMR's subsequent decision to void that election was arbitrary, capricious, or an abuse of discretion. The motion to dismiss is thus DENIED.

## C. Motion for Judgment on the Administrative Record

In the alternative, the Government has moved for judgment on the administrative record. In support of its motion, the Government asserts that the reason the AFBCMR gave for its reconsideration, that the initial application was fraudulent under 10 U.S.C. § 1552(a)(4), is a reasonable ground for reconsideration and, therefore, the reconsideration should be upheld. Def.'s Mot. at 24. Additionally, the Government argues that even if the application were not fraudulent, the AFBCMR nonetheless had the authority to reconsider the application because newly-discovered relevant evidence was submitted, and the AFBCMR has an inherent power to reconsider its own decisions. Id. at 25–27.[14] As is noted above, in order for the Government to prevail on its motion it must show that the AFBCMR's reconsideration was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 1. Was the initial application fraudulent?

Before applying to the AFBCMR for a correction of MSgt. King's records, Sarah

King attempted, through state court litigation, to have her former husband's estate make good on MSgt. King's obligation, under the divorce decree, to provide her with the survivor benefits. Admin. R. 62–67. She initially prevailed in the Georgia trial court, which determined that the SBP annuity was part of the marital property awarded to her in the divorce. See Admin. R. 41, 248; King, 483 S.E.2d at 380. This was reversed by the Georgia Court of Appeals, on the ground that a timely election of former spouse benefits under the SBP statute was not made, and that this failing under federal law precluded the state court from enforcing a divorce decree provision to the contrary. Admin. R. 47–48, 251; King, 483 S.E.2d at 383. As the Board explained it:

> The decision was made on legal grounds that the Federal law required either the decedent or the former spouse to document that the former spouse was to receive the SBP. This failure in the Federal statutory scheme resulted in the decision.

Admin. R. 31.

This failure in documentation was the very thing that Sarah King asked the AFBCMR to correct. See id. 8–9. The question this Court must answer, in reviewing the AFBCMR decision, is whether her failure to inform the Board of the Georgia appellate decision constituted fraud.

■ The statute authorizing military corrections boards, 10 U.S.C. § 1552, provides that "[e]xcept when procured by fraud, a correction under this section is final and conclusive on all officers of the United States." 10 U.S.C. § 1552(a)(4) (2004). In evaluating Joyce King's request that the correction made in favor of Sarah King be reconsidered, the AFBCMR stated that "[t]he

---

member fails to make the required election within one year of the divorce decree, an election may nevertheless be deemed to have been made—if the former spouse makes the proper submission *within one year of the divorce decree.* 10 U.S.C. §§ 1448(b)(3)(A)(iii), 1450(f)(3)(C). Thus, in other than the rare circumstance in which the service member informs his former spouse that he intends to violate the divorce decree, the latter would always find out too late to satisfy the deemed election provision, unless

she were to ignore the service member election provision as meaningless surplusage.

**14.** The Government has withdrawn an additional argument included in its motion, that the first panel of the AFBCMR committed error by making a correction that was not "favorable to the person concerned." Def.'s Reply at 3–4 n. 1; *see* n. 6, above.

chronology of facts shows [Sarah King] applied to the Board just months after losing in court and she failed to bring to the Board's attention this important fact." Admin. R. 32. The Board then concluded:

the Board majority is of the opinion that [sic] initial application for correction of the records of the decedent, submitted by the former spouse, was fraudulent within the meaning of Title 10, United States Code, Section 1552(a)(4) and that the earlier-directed correction to the [sic] his records should be set aside. In reaching this finding, the Board majority agrees with the assessment by the state Court of Appeals. Neither the decedent nor the former spouse notified DFAS of the terms of the divorce decree or initiated a change to the SBP election within the requisite period of time.

*Id.* Referencing the appellate decision, the AFBCMR stated that "had the Board known about the state litigation, a different decision may have been reached." Admin. R. 32.

■ The Board erred in its legal conclusion that Sarah King's failure to include information regarding the court of appeals case constituted fraud under 10 U.S.C. § 1552(a)(4). In order for a correction to be considered "procured by fraud" under this section, the alleged fraudulent act must be material. Although 10 U.S.C. § 1552 does not on its face state a materiality requirement, the Supreme Court has held that:

under the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses, we cannot infer from the absence of an express reference to materiality that Congress intended to drop that requirement from the fraud statutes. On the contrary, we must *presume* that Congress intended to incorporate ma-

teriality 'unless the statute otherwise dictates.'

*Neder v. United States,* 527 U.S. 1, 23, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (footnote omitted) (quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)); *see also United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997); *Standard Oil Co. v. United States,* 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911) ("where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense"); *O'Neill v. HUD,* 220 F.3d 1354, 1360 (Fed.Cir.2000); *New York Life Ins. Co. v. United States,* 190 F.3d 1372, 1381 (Fed.Cir.1999). As the Supreme Court has recognized, "the common law could not have conceived of 'fraud' without proof of materiality." *Neder,* 527 U.S. at 22, 119 S.Ct. 1827. As nothing in Title 10, section 1552 dictates or even suggests that the materiality requirement be dispensed with, the Court concludes that an omission of information in an application has to be material to constitute fraud under that section.

The federal fraud statute that is most closely analogous to the situation presented in this case is Title 18, section 1001.[15] Materiality under this statute turns on "whether the false statement has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." *Weinstock v. United States,* 231 F.2d 699, 701–702 (D.C.Cir.1956); *see Christopher Vill. L.P. v. United States,* 360 F.3d 1319, 1336 (Fed.Cir. 2004). The objective and subjective aspects of this question have been described as follows:

The matter is material if

(a) a reasonable man would attach importance to its existence or nonexistence in

**15.** This criminal statute applies to an individual who:

in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry....

18 U.S.C. § 1001. The application form for Board corrections cites both this provision and 10 U.S.C. § 287. Admin. R. 10. Since the claim made by Sarah King, for SBP survivor benefits awarded by the divorce decree, was not itself false, the latter provision in inapplicable.

determining his choice of action in the transaction in question; or

(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

Restatement (Second) of Torts § 538 (1977), cited in Neder, 527 U.S. at 22, 119 S.Ct. 1827. The Board did not conclude—nor does the record contain information supporting the conclusion—that Sarah King knew or had reason to know that the Board would regard her state court litigation to be important to its decision. See Admin. R. 30–33; id., passim. Thus, the Court's inquiry concerns the objective standard; namely, whether a reasonable panel of the AFBCMR would consider knowledge of the Georgia court of appeals decision to be important to its determination of Sarah King's application for a correction of records.

In this regard, the Court notes that the Board panel did not state that knowledge of the Georgia court opinion *would have* changed the prior panel's decision, and instead stated "a different decision *may have* been reached." Admin. R. 32 (emphasis added). Perhaps this uncertainty stemmed from the fact that only two of the three members of the original panel participated in the reconsideration decision, and one of them would have affirmed the prior decision. See id. 7, 33. But the question to be answered is not whether that particular panel, but any reasonable panel, would have been influenced by the decision of the Georgia court.

The Court concludes that knowledge of the Georgia Court of Appeals decision could not be material to Sarah King's application. The divorce decree clearly and unmistakably proves that it was the intent of Sarah and Henry King that the former receive the survivor benefits. See Admin. R. 8, 14–15. The Georgia Court of Appeals noted that a timely election of former spouse coverage had not been made, under the SBP statutory scheme. Admin. R. 47–48, 251; King, 483 S.E.2d at 383. Thus, notwithstanding the

divorce decree, it concluded it was without power to award Sarah King the benefits, because of controlling federal law. *Id.* Sarah King then applied for a correction to made by the AFBCMR, a body that *does* have the effective power to award her the benefits for which she paid.

How could knowledge of the Georgia opinion be material to the Board's decision? The Board stated that its "majority agrees with the assessment by the state Court of Appeals," Admin. R. 32, and the Government acknowledges that the Board in so doing "adopted the purely legal analysis by the Court of Appeals of the State of Georgia." Def.'s Reply at 17. But the initial decision of the Board discussed the statutory election requirements, and expressly noted that MSgt. King "failed to request an election change to establish former spouse coverage." Admin. R. 8.[16] The Board clearly knew that the election had not been made, under the statute, and was correcting the record for the very purpose of making this election to effectuate MSgt. King's intent. Nor can it be said that the Board failed to appreciate, until reading the Georgia court's opinion, that Joyce King would receive the survivor benefits absent the timely election of former spouse coverage. Indeed, the Board in its initial decision stated that "the retiree's widow, Joyce, applied for and is currently receiving the SBP annuity." Admin. R. 8.

In light of this, what was kept from the Board when Sarah King failed to inform it of her unsuccessful state court litigation? The Board could not reasonably hold against her the mere fact that she sought to vindicate her rights in state court, particularly since such activity is protected by the First Amendment. See *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The Board's reconsideration decision does suggest it was based on just such an illegitimate concern, stating as a counter to Sarah King's "equitable argument" the following: "However, a review of the record shows that she was represented by counsel at her divorce, at the state proceedings concerning

---

16. The rationale for the Board's initial decision was contained in a memorandum from the Head-

quarters Air Force Personnel Center, which was adopted by the Board. Admin. R. 6.

who should get the SBP, and on her application to the Board." Admin. R. 31–32. Since the first Board panel obviously knew she was represented by counsel in her application for a correction, *see* Admin. R. 10 (DD Form 149 signed by her attorney), and knew from the divorce decree that she was represented by counsel in that proceeding, as well, *see* Admin. R. 16 (divorce agreement identifying her attorney by name and awarding attorney's fees), this amounts to a complaint that she tried to enforce the divorce decree in state court.

If her state court litigation had resulted in a determination that the divorce decree was null and void for some reason, perhaps because it was obtained by fraud, or under duress, or the like, then it would have been material to the Board's decision. But the state court merely concluded that it could not enforce the divorce decree because the right to SBP benefits had not been perfected under the applicable federal statutory scheme. The Board knew the statutory requirements and knew that they prevented Sarah King from receiving the SBP benefits, absent a correction. A Georgia Court of Appeals decision that repeated the obvious could not have been material to a decision to correct the records to reflect compliance with the statutory requirements. Thus, the Court finds the Board's determination, that Sarah King's application was fraudulent, to be arbitrary and erroneous as a matter of law. A reasonable panel of the AFBCMR would not rely on a state court's determination that it was without power to preempt federal law, in determining whether the Air Force should correct MSgt. King's military record.[17]

2. *Was the Board's reconsideration arbitrary or unsupported by substantial evidence?*

■ The Government also argues that the AFBCMR's reconsideration was proper be-

cause the Board had the authority to reconsider its initial determination under 32 C.F.R. § 865.6 (2004). Def.'s Mot. at 25–26. This regulation is promulgated under authority of 10 U.S.C. § 1552(a)(3), which provides that "corrections under this section shall be made under procedures established by the Secretary concerned." The regulation states that the AFBCMR "may reconsider an application if the applicant submits newly discovered relevant evidence that was not available when the application was previously considered."[18] 32 C.F.R. § 865.6. According to the Government, the Georgia court of appeals decision constituted newly discovered relevant evidence.

But for the same reasons that information regarding the court of appeals case was not material to the Board's decision, any "new" information from the Georgia opinion could not be *relevant*. As is discussed above, the initial Board panel knew that the required election of former spouse benefits under the SBP statute had not been made, and knew that Joyce King would continue to receive the benefits absent a correction of the records. Admin. R. 8. The only piece of "new" information was that the state court ruled against Sarah King's claim. But all the court of appeals determined was that it was bound by federal statute and that since an election for former spouse coverage had not been made, it could not preempt federal law and award the SBP benefits to Sarah King. Admin. R. 47–48, 251; *King,* 483 S.E.2d at 383 ("Since the provisions of the SBP unambiguously preclude the rights asserted under the divorce decree, ... the consequences of enforcing the conflicting state law principles sufficiently injures the objectives of the SBP so that federal law preempts the authority of state law."). The first AFBCMR panel was fully cognizant of this aspect of the law, as it noted that MSgt. King had "failed to request an election change to establish former spouse

---

17. The Court also notes that in the state trial court proceedings, Joyce King's attorney argued that Sarah King was litigating in the wrong forum, and that for Sarah King to become entitled to the survivor benefits "this lawsuit should be brought by this plaintiff against the United States and not against Mrs. Joyce King and the estate of her husband." Admin. R. at 90.

18. It is questionable whether Joyce King was even an applicant. The reconsideration appears to have been technically improper because Joyce King did not file a DD Form 149 as required by 32 C.F.R. § 865.3. Instead, her counsel requested that the Board "sua sponte" reverse itself. Admin. R. 35.

coverage," and explained that "[e]ven though a member fails to notify the Defense Finance and Accounting Service (DFAS) of the divorce and continues to pay premiums afterwards, the former spouse is not eligible for annuity payments upon the member's death." Admin. R. 8. The fact that a state court found that it could not over-ride the requirements of a federal statute determining federal benefits is both unremarkable and utterly irrelevant to the AFBCMR's decision whether to correct records to show compliance with the statute.

■ Whether the Board was proceeding under 32 C.F.R. § 865.6, or the inherent power of a Board to reconsider its decisions, it still must articulate a legitimate reason, supported by the record, for its ultimate decision. *Cf. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). This power cannot be wielded in an arbitrary manner. The Government's *post hoc* rationalization that Sarah King's overzealous use of the state courts supported the Board's decision, Def.'s Mot. at 24–25, Def.'s Reply at 12–14, 17, does not square with the actual decision of the Board.[19] The Air Force did not evaluate the other state court proceedings, or reference them in its conclusion. Admin. R. 32.[20] The only explanation offered by the Board was that two of its three members agreed with the Georgia Court of Appeals. *Id.* But since the state court merely determined that it could do nothing in the face of a federal statutory scheme, this is no explanation for the Board's refusal to correct records to conform to this scheme. Indeed, the Board in its conclusion noted that "[n]either the decedent nor the former spouse notified DFAS of the terms of the divorce decree or initiated a change to the SBP election," and then concluded: *"Based on this fact* and in view of the provisions of the law in effect at

that time, the Board majority believes that the correct beneficiary is the surviving spouse." Admin. R. 32 (emphasis added). But this fact (and the requirements of the law) was known by the first panel. *See* Admin. R. 8–9. The Board's decision to void the initial correction is thus unsupported by evidence in the record, and arbitrary.

*3. Was reconsideration procedurally unreasonable?*

■ The Government also argues that the Board's decision reconsider may be upheld even if there were no fraud involved or in the absence of new evidence, based on an agency's broad and inherent powers to reconsider its decisions. Def.'s Mot. at 26–27. In other words, it argues that it is every board's prerogative to change its mind. But the general right of a board to reconsider its prior decisions exists only "in the absence of a controlling statute or regulation to the contrary." *Biddle v. United States,* 186 Ct. Cl. 87, 98, 1968 WL 9159 (1968). As is discussed above, the only ground for reconsideration mentioned in the relevant regulation is when "the applicant submits newly discovered relevant evidence that was not available when the application was previously considered." 32 C.F.R. § 865.6. The Court concludes that only this ground, or the ground of fraud which would nullify a decision's finality under 10 U.S.C. § 1552(a)(4), may be used by the Board to justify reconsideration of a final decision.

■ In any event, recourse to the inherent power of reconsideration is allowed only before the decision in question "irrevocably vest[s] rights." *Biddle,* 186 Ct.Cl. at 99; *see also Dayley v. United States,* 169 Ct.Cl. 305, 308, 1965 WL 8250 (1965) (concluding that reconsideration must occur "before an appeal has been taken or other rights vested").

19. The Government also misrepresents the record, claiming that statements made by Joyce King's attorney were actually made by a "tribunal," *see* Def.'s Reply at 13–14 (citing Admin. R. 296), or by Joyce King herself. *See id.* at 14 (citing Admin. R. 57). And in its *post hoc* rationalization concerning the respective equities, the Government ignores the unrebutted, sworn affidavit from Sarah King that states that an attorney whose advice she sought concerning

the matter of the survivor benefits advised her to sue the Air Force, and then later represented Joyce King in defense of Sarah's state court lawsuits. *See* Admin. R. 326–27.

20. Moreover, the record does not indicate that the Air Force even attempted to send to Sarah King this "additional information" contained in Joyce King's second submission.

Mindful of this, the rule has developed that a reconsideration action must be "conducted within a short and reasonable time period." *Bookman v. United States*, 197 Ct.Cl. 108, 453 F.2d 1263, 1265 (1972); *see also Biddle*, 186 Ct.Cl. at 98 (stating "requests for reconsideration will usually be considered only within a short or otherwise reasonable period of time"); *Cooley v. United States*, 324 F.3d 1297, 1305 (Fed.Cir.2003) (holding "reconsideration of an agency's decision must arise within a reasonable period of time").

The period of time that elapsed between the initial decision and the reconsideration was not reasonable. *See, e.g., Gratehouse v. United States*, 206 Ct.Cl. 288, 512 F.2d 1104, 1109 (1975) ("What is a short and reasonable time period will vary with each case, but absent unusual circumstances, the time period would be measured in weeks, not years."); *Bentley v. United States*, 3 Cl.Ct. 403, 406 (1983) (holding that an eleven month time lapse between decision of award and the reversal was clearly unreasonable). Sarah King was awarded the SBP benefits on September 9, 1998. In a letter dated August 19, 1999, Joyce King's attorney threatened to "engag[e] in litigation in the United States District Court" unless the Board decision was "sua sponte reversed." Admin. R. 34–35. The Board's reconsideration decision was issued February 3, 2000. The AFBCMR thus entertained reconsideration over eleven months after rendering its initial decision, and voided that initial decision nearly seventeen months after it was issued. In the interim, Sarah King's right to the SBP benefits vested and she received benefits in the tens of thousands of dollars. Ex. B to Pl. Response. Under these circumstances, the Board's reconsideration was procedurally defective and thus contrary to law. *See Dayley*, 169 Ct.Cl. at 309 n. 2 (providing as examples of the "short period" in which reconsideration may be allowed time periods ranging from five to thirty days); *see also, e.g., Bookman*, 453 F.2d at 1264 (request for reconsideration received within two weeks, and revised decision issued within sixteen weeks of the first one).

■ Additionally, the Court holds that "an agency may undertake reconsideration only if it ... affords the claimant proper notice of its intent to reconsider the decision." *Dun & Bradstreet Corp. Foundation v. United States Postal Service*, 946 F.2d 189, 193 (2d Cir.1991); *see also Bookman*, 453 F.2d at 1265 (recognizing that federal statutes have allowed reconsideration where proper notice is given). The Government argues that mailing a letter to the plaintiff, addressed care of her former attorney, *see* Admin. R. 53, notifying her of Joyce King's request for reconsideration and providing her with the opportunity to comment on the Judge Advocate General office's legal opinion, constituted adequate notice. To justify this argument the Government cites the less-than-absolute language of 32 C.F.R. § 865.4(b), which states that the "[a]pplicant will normally be given an opportunity to review and comment on advisory opinions and additional information provided by the Board." Def. Reply at 18. The Government further argues that the AFBCMR met any obligation it had to Sarah King because "a letter which is properly sealed, stamped, addressed, and deposited in the United States mails is presumed to reach the address and be received," *Smith v. United States Postal Service*, 789 F.2d 1540, 1542 n. 2 (Fed.Cir.1986) (quoting *Charlson Realty Co. v. United States*, 181 Ct.Cl. 262, 384 F.2d 434, 442 (1967)). Def.'s Reply at 18–19.

At the time it decided to reconsider its earlier decision, the Air Force was directly sending the SBP benefits to Sarah King, yet it chose to send notice to the address of an attorney who had represented her more than one year in the past. *See* Admin. R. 53. The record indicates that the AFBCMR had Sarah King's address, as she included it in her direct correspondence with the Board. Admin. R. 23, 26. Although the Government cites a regulation, 32 C.F.R § 865.4, which states that applicants are "normally" given notice of JAG advisory opinions or additional information received from "any Air Force organization or official," this provision concerns neither reconsideration decisions nor information received from outside sources. Moreover, it cannot override the requirements of due process. The Government argues that the mailing to her former attorney was adequate because "[i]f agencies could not rely on the due course of the mails,

they could never safely act," Def.'s Reply at 19 (*quoting Smith*, 789 F.2d at 1544). But the notice was not sent directly to Sarah King, nor was it sent by certified or other traceable mail. Thus, the Court concludes that the notice was not sent in a manner reasonably calculated to apprise Sarah King of the impending reconsideration, *see Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940), and was thus inadequate as a matter of law.

### III. CONCLUSION

Because a correction had been made by the Air Force Board for Correction of Military Records that triggered the payment of benefits to plaintiff under the money-mandating SBP statute, plaintiff has a claim in our Court for those benefits when the Board later reverses itself. It was not fraudulent for plaintiff to fail to inform the Board that a state court of appeals had decided that it was without power to preempt federal law. Nor did this court of appeals ruling contain newly discovered ánd relevant information pertaining to the Board's decision whether to correct the records of plaintiff's former husband. The Board's decision to void its prior correction was arbitrary, capricious, unsupported by substantial evidence, and contrary to law. The Board's reconsideration was also defective in that it was not made within a reasonable period of time and with adequate notice to the plaintiff.

For the foregoing reasons the Government's Motion to Dismiss and its Motion for Judgment Upon the Administrative Record are **DENIED**.

**IT IS SO ORDERED.**